CRIME AND FIDELITY
CR 00 21 05 06

# COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. Definitions.

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition E.1.k. or E.1.l., which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition E.1.g.:

#### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

#### 2. Forgery Or Alteration

a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

b. If you are sued for refusing to pay any instrument covered in Paragraph 2.a., on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

#### 3. Inside The Premises – Theft Of Money And Securities

a. We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

(1) Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

(2) Resulting directly from disappearance or destruction.

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

c. We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

#### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

a. We will pay for loss of or damage to "other property":

(1) Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

(2) Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.


EXHIBIT 3

CR 00 21 05 06 © ISO Properties, Inc., 2005 Page 1 of 14

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

5. **Outside The Premises**

   a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

   b. We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

6. **Computer Fraud**

   We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

   a. To a person (other than a "messenger") outside those "premises"; or

   b. To a place outside those "premises".

7. **Funds Transfer Fraud**

   We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

8. **Money Orders And Counterfeit Money**

   We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

   a. Money orders issued by any post office, express company or bank that are not paid upon presentation; or

   b. "Counterfeit money" that is acquired during the regular course of business.

B. **Limit Of Insurance**

   The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

   If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

C. **Deductible**

   We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

D. **Exclusions**

   1. This Insurance does not cover:

      a. **Acts Committed By You, Your Partners Or Your Members**

         Loss resulting from "theft" or any other dishonest act committed by:

         (1) You; or

         (2) Any of your partners or "members";

         whether acting alone or in collusion with other persons.

      b. **Acts Of Employees Learned Of By You Prior To The Policy Period**

         Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

      c. **Acts Of Employees, Managers, Directors, Trustees Or Representatives**

         Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

         (1) Whether acting alone or in collusion with other persons; or

         (2) While performing services for you or otherwise;

         except when covered under Insuring Agreement A.1.

      d. **Confidential Information**

         Loss resulting from:

         (1) The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

(2) The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

e. **Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

f. **Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

(1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

(2) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

(3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

g. **Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement A.2.

h. **Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

i. **Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

j. **War And Military Action**

Loss or damage resulting from:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2. Insuring Agreement A.1. does not cover:

a. **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(1) An inventory computation; or

(2) A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

b. **Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

c. **Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreements A.3., A.4. and A.5. do not cover:

a. **Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

b. **Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

c. **Fire**

Loss or damage resulting from fire, however caused, except:

(1) Loss of or damage to "money" and "securities"; and

(2) Loss from damage to a safe or vault.

d. **Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

e. **Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

f. **Transfer Or Surrender Of Property**

(1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

(a) On the basis of unauthorized instructions;

(b) As a result of a threat to do bodily harm to any person;

(c) As a result of a threat to do damage to any property;

(d) As a result of a threat to introduce a denial of service attack into your computer system;

(e) As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

(f) As a result of a threat to contaminate, pollute or render substandard your products or goods; or

(g) As a result of a threat to disseminate, divulge or utilize:

(i) Your confidential information; or

(ii) Weaknesses in the source code within your computer system.

(2) But, this Exclusion does not apply under Insuring Agreement A.5. to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

(a) Had no knowledge of any threat at the time the conveyance began; or

(b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

g. **Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

h. **Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

4. Insuring Agreement A.6. does not cover:

a. **Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

b. **Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

c. **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(1) An inventory computation; or

(2) A profit and loss computation.

5. Insuring Agreement A.7. does not cover:

**COMPUTER FRAUD**

Loss resulting from the use of any computer to fraudulently cause a transfer of "money", "securities" or "other property".

E. Conditions

The following Conditions apply in addition to the Common Policy Conditions:

1. Conditions Applicable To All Insuring Agreements

   a. Additional Premises Or Employees

   If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

   b. Concealment, Misrepresentation Or Fraud

   This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

   (1) This insurance;
   (2) The property covered under this insurance;
   (3) Your interest in the property covered under this insurance; or
   (4) A claim under this insurance.

   c. Consolidation – Merger Or Acquisition

   If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

   (1) You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this Insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

   (2) For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

   d. Cooperation

   You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

   e. Duties In The Event Of Loss

   After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

   (1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities.
   (2) Submit to examination under oath at our request and give us a signed statement of your answers.
   (3) Produce for our examination all pertinent records.
   (4) Give us a detailed, sworn proof of loss within 120 days.
   (5) Cooperate with us in the investigation and settlement of any claim.

   f. Employee Benefit Plans

   (1) The "employee benefit plans" shown in the Declarations (hereinafter referred to as Plan) are included as Insureds under Insuring Agreement A.1.
   (2) If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement A.1. that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement A.1. is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(4) If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

(5) If two or more Plans are insured under this insurance, any payment we make for loss:

(a) Sustained by two or more Plans; or

(b) Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

(6) The Deductible Amount applicable to Insuring Agreement A.1. does not apply to loss sustained by any Plan.

g. **Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

(1) No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(2) No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

h. **Joint Insured**

(1) If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

(2) If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

(3) An "employee" of any Insured is considered to be an "employee" of every Insured.

(4) If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

(a) No later than 1 year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(b) No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

(5) We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

(6) Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

i. **Legal Action Against Us**

You may not bring any legal action against us involving loss:

(1) Unless you have complied with all the terms of this insurance;

(2) Until 90 days after you have filed proof of loss with us; and

(3) Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

j. **Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

k. **Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

(1) **Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

(a) Partly during the Policy Period shown in the Declarations; and

(b) Partly during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the Policy Period(s) of the prior insurance.

(2) **Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the Policy Period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

(a) This insurance became effective at the time of cancellation of the prior insurance; and

(b) The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the Policy Period(s) of any other prior insurance.

(3) In settling loss subject to this Condition:

(a) The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

(b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

(4) The following examples demonstrate how we will settle losses subject to this Condition E.1.k.:

**EXAMPLE NO. 1:**

The insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy A and Policy B.

### POLICY A

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

### POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy A is $2,500 and under Policy B is $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy A. The Policy A Deductible Amount of $5,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy A ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).
2. The remaining amount of loss sustained under Policy B ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy A of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**EXAMPLE NO. 2:**

The insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy A and Policy B.

### POLICY A

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

### POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

The amount of loss sustained under Policy A is $175,000 and under Policy B is $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy B. The Policy A Deductible Amount of $10,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy A ($175,000) is settled first. The amount we will pay is the Policy A Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000 which is greater than the $125,000 policy limit.
2. The remaining amount of loss sustained under Policy B ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy B limit - $125,000 paid under Policy A = $25,000).

The most we will pay for this loss is $150,000.

**EXAMPLE NO. 3:**

The insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies A, B, C and D.

### POLICY A

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

### POLICY B

Issued prior to Policy A. Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

### POLICY C

Issued prior to Policy B. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

### POLICY D

Issued prior to Policy C. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy A is $350,000, under Policy B is $250,000, under Policy C is $600,000 and under Policy D is $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy A. The Policy A Deductible Amount of $100,000 applies. The loss is settled as follows:

1. The amount of loss sustained under Policy A ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).
2. The amount of loss sustained under Policy B ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).
3. The amount of loss sustained under Policy C ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).
4. We will not make any further payment under Policy D as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy A has been satisfied.

The most we will pay for this loss is $1,000,000.

l. **Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

(1) If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the Policy Period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this insurance, provided:

(a) This insurance became effective at the time of cancellation of the prior insurance; and

(b) The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

(2) In settling loss subject to this Condition:

(a) The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

(b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

(3) The insurance provided under this Condition is subject to the following:

(a) If loss covered under this Condition is also partially covered under Condition E.1.k., the amount recoverable under this Condition is part of, not in addition to, the amount recoverable under Condition E.1.k.

(b) For loss covered under this Condition that is not subject to Paragraph (3)(a), the amount recoverable under this Condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

(i) This insurance as of its effective date; or

(ii) The prior cancelled insurance had it remained in effect.

m. **Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

(1) **Primary Insurance**

When this insurance is written as primary insurance, and:

(a) You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

(b) You have other insurance covering the same loss other than that described in Paragraph (1)(a), we will only pay for the amount of loss that exceeds:

(i) The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

(ii) The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

(2) **Excess Insurance**

(a) When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

(b) However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

n. **Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

(1) That you own or lease; or

(2) That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

o. **Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

p. **Recoveries**

(1) Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this insurance.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

q. **Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

r. **Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

s. **Valuation – Settlement**

(1) The value of any loss for purposes of coverage under this policy shall be determined as follows:

(a) Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

(i) At face value in the "money" issued by that country; or

(ii) In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(b) Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

(i) Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

i. Market value of the "securities" at the close of business on the day the loss was "discovered"; or

ii. The Limit of Insurance applicable to the "securities".

(c) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

   (i) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

   (ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

   (iii) The Limit of Insurance applicable to the lost or damaged property.

   With regard to Paragraphs a.(1)(c)(i) through a.(1)(c)(iii), we will not pay on a replacement cost basis for any loss or damage:

   i. Until the lost or damaged property is actually repaired or replaced; and

   ii. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

   If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2) We will, at your option, settle loss or damage to property other than "money":

   (a) In the "money" of the country in which the loss or damage occurred; or

   (b) In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

(3) Any property that we pay for or replace becomes our property.

2. **Conditions Applicable To Insuring Agreement A.1.**

   a. **Termination As To Any Employee**

      This Insuring Agreement terminates as to any "employee":

      (1) As soon as:

         (a) You; or

         (b) Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

         learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

      (2) On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

      We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

   b. **Territory**

      We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition E.1.q. for a period of not more than 90 consecutive days.

3. **Conditions Applicable To Insuring Agreement A.2.**

   a. **Deductible Amount**

      The Deductible Amount does not apply to legal expenses paid under Insuring Agreement A.2.

   b. **Electronic And Mechanical Signatures**

      We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

   c. **Proof Of Loss**

      You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

d. Territory

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.q. does not apply to Insuring Agreement A.2.

4. Conditions Applicable To Insuring Agreements A.4. And A.5.

   a. Armored Motor Vehicle Companies

   Under Insuring Agreement A.5., we will only pay for the amount of loss you cannot recover:

   (1) Under your contract with the armored motor vehicle company; and

   (2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

   b. Special Limit Of Insurance For Specified Property

   We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

   (1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

   (2) Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

5. Conditions Applicable To Insuring Agreement A.6.

   a. Special Limit Of Insurance For Specified Property

   We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

   b. Territory

   We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition E.1.q. does not apply to Insuring Agreement A.6.

F. Definitions

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

4. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

   "Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance

5. "Employee":

   a. "Employee" means:

   (1) Any natural person:

   (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any dishonest act committed by the "employee";

   (b) Who you compensate directly by salary, wages or commissions; and

   (c) Who you have the right to direct and control while performing services for you;

   (2) Any natural person who is furnished temporarily to you:

   (a) To substitute for a permanent "employee" as defined in Paragraph a.(1), who is on leave; or

   (b) To meet seasonal or short-term work load conditions;

   while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph a.(2);

(4) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

(b) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

(5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

(6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises";

(7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this policy; or

(8) Any of your "managers", directors or trustees while:

(a) Performing acts within the scope of the usual duties of an "employee"; or

(b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

b. "Employee" does not mean:

Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph 5.a.

6. "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

7. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. "Fraudulent instruction" means:

a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

b. A written instruction (other than those described in Insuring Agreement A.2.) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

c. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

9. "Funds" means "money" and "securities".

10. "Manager" means a person serving in a directorial capacity for a limited liability company.

11. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

12. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

13. "Money" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

14. "Occurrence" means:

a. Under Insuring Agreement A.1.:

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition E.1.k. or E.1.l.

b. Under Insuring Agreement A.2.:

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition E.1.k. or E.1.l.

c. Under All Other Insuring Agreements:

(1) An individual act or event;

(2) The combined total of all separate acts or events whether or not related; or

(3) A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition E.1.k. or E.1.l.

15. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

16. "Premises" means the interior of that portion of any building you occupy in conducting your business.

17. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

a. Caused or threatened to cause that person bodily harm; or

b. Committed an obviously unlawful act witnessed by that person.

18. "Safe burglary" means the unlawful taking of:

a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

b. A safe or vault from inside the "premises".

19. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

20. "Theft" means the unlawful taking of property to the deprivation of the Insured.

21. "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

a. By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

b. By means of written instructions (other than those described in Insuring Agreement A.2.) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

22. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

ARCH INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ESIP CRIME EXTENSIONS

This endorsement modifies the insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

I. The definition of "employee" is amended to include:

A. Your non-compensated officers.

B. Your directors or board members by whatever name called while acting as a member of any of your elected or appointed committees to perform on your behalf specific, as distinguished from general, directorial acts.

C. Your treasurer or tax collector.

D. Your volunteer workers. Volunteer workers means any non-compensated natural person while performing services for you that are usual to the duties of an "employee".

E. Your leased worker. Leased worker means any natural person leased to you by a labor leasing firm, under a written agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.

II. Exclusion D.2.a. Bonded Employees of the GOVERNMENT CRIME COVERAGE FORM and the GOVERNMENT CRIME POLICY is deleted.

III. Exclusion D.2.d. Treasurer or Tax Collector of the GOVERNMENT CRIME COVERAGE FORM and the GOVERNMENT CRIME POLICY is deleted.

CRIME AND FIDELITY
CR 01 37 10 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES – VIRGINIA

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
GOVERNMENT EMPLOYEE THEFT AND FORGERY POLICY

A. We will not pay for loss or damage resulting directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

1. The failure, malfunction or inadequacy of:

   a. Any of the following, whether belonging to any insured or to others:

      (1) Computer hardware, including microprocessors;

      (2) Computer application software;

      (3) Computer operating systems and related software;

      (4) Computer networks;

      (5) Microprocessors (computer chips) not part of any computer system; or

      (6) Any other computerized or electronic equipment or components; or

   b. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this endorsement, due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded cause of loss as described in Paragraph A. of this endorsement results in a covered cause of loss, we will pay only for the loss or damage caused by such covered cause of loss.

C. We will not pay for repair, replacement or modification of any items in Paragraphs A.1.a. and A.1.b. of this endorsement to correct any deficiencies or change any features.

CR 01 37 10 10            © Insurance Services Office, Inc., 2009            Page 1 of 1

CRIME AND FIDELITY
CR 01 53 08 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
GOVERNMENT CRIME COVERAGE FORM
KIDNAP/RANSOM AND EXTORTION COVERAGE FORM

A. Paragraphs 2., 3. and 5. of the Cancellation Common Policy Condition are replaced by the following:

2. We may cancel this policy by mailing or delivering to you written notice of cancellation at least

   a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to your last mailing address known to us.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

   a. We will compute return premium pro rata and round to the next higher whole dollar when this policy is cancelled:

      (1) At our request;

      (2) Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

      (3) And rewritten by us or a member of our company group; or

      (4) After the first year, if it is a prepaid policy written for a term of more than one year.

   b. When this policy is cancelled at your request (except when Paragraph a.(2), a.(3) or a.(4) applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

B. The following is added and supersedes any other provision to the contrary:

   **NONRENEWAL**

   1. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to you, stating the reason for nonrenewal, at least:

      a. 10 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

      b. 30 days before the expiration date if the nonrenewal is for any other reason.

   2. We will mail or deliver our notice to your last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

CR 01 53 08 07 © ISO Properties, Inc., 2006 Page 1 of 1

IL 01 52 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following when written as part of a Commercial Package Policy containing liability coverage and supersedes the cancellation and nonrenewal provisions contained in any amendatory endorsement(s) of a policy to which this endorsement is attached.

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART

A. Paragraphs 2., 3. and 5. of the Cancellation Common Policy Condition are replaced by the following:

  2. We may cancel this policy by mailing or delivering to you written notice of cancellation, stating the reason for cancellation, at least:

   a. 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 45 days before the effective date of cancellation if we cancel for any other reason.

  3. We will mail or deliver written notice to your last mailing address known to us. If notice is mailed, it will be sent by ordinary mail for which a Certificate of Mailing has been obtained, or by registered or certified mail.

  5. If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

   a. We will compute return premium pro rata and round to the next higher whole dollar when this policy is cancelled:

    (1) At our request;

    (2) Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

    (3) And rewritten by us or a member of our company group; or

    (4) After the first year, if it is a prepaid policy written for a term of more than one year.

   b. When this policy is cancelled at your request (except when Paragraph a.(2), a.(3) or a.(4) applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multi-year prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

B. The following is added and supersedes any other provision to the contrary:

 **NONRENEWAL**

  1. If we elect not to renew this policy, we will mail or deliver a notice of nonrenewal to you, stating the reason for nonrenewal, at least:

   a. 15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

   b. 45 days before the expiration date if the nonrenewal is for any other reason.

  2. We will mail or deliver written notice of nonrenewal to your last mailing address known to us. If notice is mailed, it will be sent by ordinary mail for which a Certificate of Mailing has been obtained, or by registered or certified mail.